# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ALTON G. POOLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | )   1:13CV532 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alton G. Poole brought this action pursuant to 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act, to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act. Doc. #2. The administrative record was certified to the Court for review.[1] Plaintiff filed a Motion for Judgment on the Pleadings, Doc. #14, and Defendant filed a Motion for Judgment on the Pleadings, Doc. #16. On November 18, 2014, a hearing was held on the parties'

---

[1] All references to the administrative record are noted as "A.R."

motions.[2] For the reasons explained below, Plaintiff's Motion for Judgment on the Pleadings is DENIED, and Defendant's Motion for Judgment on the Pleadings is GRANTED.

I.

Plaintiff filed an application for supplemental security income on June 26, 2008, with an alleged onset date of January 2, 2003. (A.R. 82-83.)[3] The claim was denied initially and upon reconsideration. (Id. at 82-83.) On October 21, 2010, a video hearing was held, at which Plaintiff was represented by counsel and he and a vocational expert testified. (Id. at 58-81.) In his decision dated November 24, 2010, the Administrative Law Judge ("ALJ") found Plaintiff not disabled. (Id. at 50.) Plaintiff alleges that the ALJ erred (1) by failing to include in the Residual Functional Capacity

---

[2]All references to attorney assertions and argument during the hearing before this Court are referred to as "Tr."

[3]According to the Administrative Law Judge ("ALJ"), at the hearing, Plaintiff moved to amend his onset date to April 22, 2009, alleging sobriety from that date forward, and the ALJ granted the motion. (A.R. 42.) It is unclear, however, if Plaintiff agreed that April 22, 2009 was the correct date. (See id. at 61-63.) Plaintiff's counsel only references in his Brief the alleged onset date of January 2, 2003, but does not assert that the ALJ erred by revising the alleged onset date. See Pl.'s Br. in Support of Mtn. 1. Perhaps this is because the relevant period for an application for supplemental security income is the date of the application, 20 C.F.R. § 416.501, the date the ALJ ultimately referenced when he found Plaintiff not disabled, (A.R. 42, 50).

2

("RFC") finding or hypothetical question that Plaintiff suffers from the side effects of medication, (2) by failing to give reasons for his adverse credibility determination, (3) by making an RFC finding before making a finding regarding Plaintiff's credibility, and (4) by failing to consider Dr. Calhoun's finding that Plaintiff has borderline memory and that his serious liver disease may limit his ability to sustain attention and perform repetitive tasks.[4] Substantial evidence supports the ALJ's findings, and he applied the correct law. There is no error.

II.

This Court's review of the Commissioner of Social Security's decision that Plaintiff is not disabled is limited to determining whether the ALJ's findings are supported by substantial evidence and whether he applied the correct law. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted). This Court does not reweigh evidence

---

[4]At the hearing before this Court, Plaintiff's counsel focused his argument on issues (1) and (4), describing them as Plaintiff's "strongest position to receive a remand." Tr. 3:14-15, 23, 6:3-4.

3

or make credibility determinations. Id.

Plaintiff's first, second, and third issues center around whether the ALJ properly determined and supported his determination as to Plaintiff's credibility. "Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). To enable meaningful review, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." SSR 96-7p, 1996 WL 374186, at *2.

Plaintiff first alleges that the ALJ erred by failing to include in the RFC or the hypothetical question posed to the vocational expert that Plaintiff suffers from the side effects of medication, specifically fatigue and drowsiness. Pl.'s Br. in Support of Mtn. 7-8. As part of his argument, Plaintiff asserts that if the ALJ discredited Plaintiff's testimony regarding the extent of his symptoms, the ALJ did not sufficiently explain why. Id. at 8-9. In support of his argument, Plaintiff cites to his therapist's notes from August 6, 2009 and October 8, 2009 reflecting Plaintiff's reports of lack of energy and feeling drowsy as a result of his medications. Id. at 8 (citing

A.R. 974, 976.) Plaintiff also cited to his testimony before the ALJ that his medication made him sleep all day, on some days he cannot wake up, and all he does is sleep and go to the bathroom. Id. (citing A.R. 70-72.) Although Plaintiff accurately cites to those records and his testimony, other medical records, other portions of Plaintiff's testimony, and Plaintiff's own actions indicate that Plaintiff's symptoms are not as disabling as he argues.

Prior to the amended alleged onset date, on September 3, 2005, Dr. Peter Morris noted that Plaintiff "was a very poor historian who seemed to be exaggerating his complaints so his reliability was judged to be poor." (A.R. 437.) Dr. Morris felt that Plaintiff "exaggerated his tenderness because he seemed to be stating that he was tender to palpation in each area [ankles, knees, hips, hands, wrists, elbows, shoulders, bones in feet, lower legs, upper legs, and arms] even before he was touched." (Id. at 441; see also id. at 442.) On April 27, 2009, after the amended alleged onset date, Drs. Mohammed Aslam and Carrie Brown noted in Plaintiff's Discharge Summary from Central Regional Hospital that he "endorses command auditory hallucinations which are most likely substance induced or malingering as patient . . . has secondary gain reasons to obtain hospitalization." (Id. at 812.) As part of an assessment at Alternative Care

5

Treatment Systems on August 6, 2009, at the same time that Plaintiff reported feeling tired, the medical professional noted him to be "alert."[5] (Id. at 977.)

In addition to the inconsistencies reported in Plaintiff's medical records, Plaintiff's testimony is inconsistent. Initially, Plaintiff testified that he was taking "three or four different kinds of medications." (Id. at 70.) He then stated, "there's three kinds, though." (Id.) Later, he testified that he was "on four, five kinds of pills." (Id. at 72.) Although he testified that, for example, "the pills they've got me on have me sleep all days" and "[a]ll I do is sleep and use the bathroom" (id. at 70, 72), he also testified that he goes to see his psychiatrists three times a month on Tuesdays, something he has done for the past year and a half (id. at 73), he goes to see his doctor once a month (id.), he watches television (id. at 75), and he is "real hyper" (id. at 70).

Furthermore, despite his suggestion that his fatigue is significantly limiting, from June 10, 2009 to October 12, 2009, Plaintiff successfully attended an intensive out-patient substance abuse program that met nine hours a day, five days a week. (Id. at 891.) He followed the rules, attended

---

[5] The other choices were "attentive," "easily distracted," "lethargic," and "non-responsive."

groups daily, gave positive feedback to his peers, and was a pleasure to work with. (Id.)  Plaintiff completed three-fourths of the program and would have been eligible to graduate had he returned. (Id.)

As part of the ALJ's credibility analysis and his "careful consideration of the evidence," he reviewed Plaintiff's testimony about, among other things, medication side effects, including the need to sleep all day and all night. (Id. at 46.)  The ALJ then compared the medical evidence of record, prior to and after the amended alleged onset date of April 22, 2009. (Id. at 46-48.)  As part of his analysis, the ALJ also cited testimony from the hearing when weighing the physical and mental assessments of state examiners. (Id. at 48.)  The ALJ's examination of the objective medical evidence in reference to Plaintiff's testimony about his symptoms is sufficiently specific to allow for meaningful review.

Substantial evidence supports the ALJ's findings that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of such symptoms are not supported by the objective medical evidence.  With respect to Plaintiff's RFC, the ALJ did not specifically use the words "fatigue" or "drowsiness," but he did include

limitations related to such symptoms, limitations that the record supports. "After careful consideration of the entire record" and consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," the ALJ determined that Plaintiff had the RFC "to perform a limited range of medium work" with the following limitations:

> occasionally climb ladders and balance; <u>requires rest after activities of daily living; has moderate restrictions in concentration, persistence, or pace; has moderate difficulty remembering detailed instructions and maintaining attention and concentration for extended periods; moderately limited in the ability to perform within a schedule and be functional in a normal workday and workweek without psychological symptoms and without reasonable number of rest breaks</u>; moderately limited in the ability to respond to instructions from supervisors; has no behavior extremes; moderately limited in the ability to respond to changes in the work setting and set realistic goals and make plans independent of others; <u>limited to simple work for 2 hours in a low social setting</u>; can lift 25 pounds frequently and 50 pounds occasionally, but with the left [sic] dominant arum, lifting is limited to 5-10 pounds; sit/stand or walk 6 hours for each activity due to the injury to the right arm, and the use of a sling for a non durational period.

(<u>Id.</u> at 45) (emphasis added). Not only does substantial evidence support the ALJ's RFC determination, but also the hypothetical question that he posed to the vocational expert, which mirrored the RFC. (<u>See</u> <u>id.</u> at 77-78.)

Plaintiff also argues that the ALJ's determination that "the claimant's

8

statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (id. at 19), is error according to Bjornson v. Astrue, 671 F.3d 640 (7th Cir. 2012). Plaintiff states that some courts find "a Bjornson error" reversible when the ALJ fails to "'build a bridge' between the evidence and the ALJ's ultimate conclusion." He argues that, here, the ALJ only compiled the components to build the bridge, but left the bridge-building to this Court. Pl.'s Br. in Support of Mtn. 13. Although the ALJ's language that Plaintiff parses from the ALJ's decision is similar to that in Bjornson, the ALJ did more than merely compile components to build the bridge between the evidence and his conclusion. Initially, he explained that "[i]n making this [RFC] finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . . I have also considered opinion evidence." (A.R. 45.) He cited to Plaintiff's testimony, (id. at 46, 48), and objective evidence, (id. at 46-48), when he was analyzing Plaintiff's credibility and repeatedly stated that he had reviewed the entire record as part of his analysis, (e.g., id. at 45, 46). See Bishop v. Comm'r of Soc. Sec., No. 14-1042, 2014 WL 4347190,

9

at *2 (4th Cir. Sept. 3, 2014) (upholding ALJ's credibility determination because, although the ALJ used similar language to that in Bjornson, he cited specific contradictory testimony and evidence and stated that he had reviewed the entire record). As explained above, there is substantial evidence for the ALJ's findings that the objective medical evidence does not support Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms. Therefore, there is no error with respect to Plaintiff's alleged first, second, and third issues.

III.

Next, Plaintiff alleges that the ALJ erred by failing to consider the findings of Patrick Calhoun, Ph.D., a clinical psychologist who completed a Report of Psychological Evaluation after examining Plaintiff on October 28, 2005, nearly three years prior to Plaintiff's application for benefits, three and a half years prior to Plaintiff's amended alleged onset date, and over five years prior to the hearing before the ALJ. (See A.R. Exs. 9F & 46F.) Specifically, Plaintiff identifies Dr. Calhoun's opinion that Plaintiff's "current serious liver disease, if verified through a physical exam, may limit his ability to sustain attention and perform repetitive tasks," (id. at 1035). Plaintiff also alleges that the ALJ did not include in Plaintiff's RFC or in the

10

hypothetical question to the vocational expert Dr. Calhoun's purported opinions that Plaintiff's "memory is borderline across the board" and that Plaintiff was "easily distracted" and often had difficulty sustaining attention. Substantial evidence supports the weight the ALJ attributed to Dr. Calhoun's findings.

Dr. Calhoun evaluated Plaintiff in October 2005. Approximately three years after Dr. Calhoun examined Plaintiff, two state consultants, Drs. April Strobel-Nuss and Sharon Skoll, examined Plaintiff on August 12, 2008 and December 4, 2008, respectively. They reviewed Dr. Calhoun's report as part of their objective evidence. (Id. at 762, 800.) Dr. Strobel-Nuss found that Plaintiff's depression caused him moderate limitations in, among other things, (1) the ability to understand and remember detailed instructions, (2) the ability to carry out detailed instructions, (3) the ability to maintain attention and concentration for extended periods, (4) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (5) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Id. at 764-65; see also id. at 802-03

(detailing Dr. Skoll's similar findings).) To Dr. Strobel-Nuss, Plaintiff appeared to have borderline memory functioning, but was able to understand and remember simple instructions and to maintain the level of attention and concentration required to perform simple, routine, repetitive tasks. (Id. at 766.) Similarly, Dr. Skoll determined that Plaintiff was able to understand and remember simple instructions and to sustain attention and concentration for at least two hours at a time as required for the performance of simple, routine, repetitive tasks. (Id. at 804.)

As part of his decision, the ALJ referenced Dr. Calhoun's report when the ALJ noted Plaintiff "underwent a consultative psychological evaluation in October 2005" after which he was diagnosed with depressive disorder, NOS, and polysubstance dependence. (Id. at 45.) However, after "a thorough review of all the evidence, including the testimony at the hearing," the ALJ gave "great weight" to the much more recent reports of Drs. Strobel-Nuss and Skoll. (Id. at 48.) Substantial evidence supports the ALJ's decision. There is no error.

V.

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings, Doc. #14, is **DENIED**, and Defendant's Motion for Judgment on

the Pleadings, Doc. #16, is **GRANTED**.

This the 5th day of December, 2014.

<u>/s/ N. Carlton Tilley, Jr.</u>
Senior United States District Judge